| Document Number | **Exhibit 5**<br>Construction Mortgage |
|---|---|

**2964644**
**CHERYL BERKEN**
**BROWN COUNTY**
**REGISTER OF DEEDS**
**GREEN BAY, WI**
**RECORDED ON**
**06/23/2021 02:10 PM**
**REC FEE: 30.00**
**TRANS FEE:**
**EXEMPT #**

**PAGES: 16**
****The above recording information verifies that this document has been electronically recorded and returned to the submitter****

Recording Area

Name and Return Address

Philip M. J. Edison, Esq.
Chapman and Cutler LLP
111 West Monroe Street
Chicago, Illinois 60603

Parcel Identification Number (PIN)

Tax Key No: ND 756 2

This information must be completed by submitter: document title, name & return address, and PIN (if required). Other information such as the granting clause, legal description, etc., may be placed on this first page of the document or may be placed on additional pages of the document.

WRDA Rev. 12/22/2010

**Exhibit 5**

Construction Mortgage

6601-6587 County Rd
Denmark, Wisconsin 54208
Brown County, Wisconsin

This instrument was prepared by and when recorded return to:
Philip M. J. Edison, Esq.
Chapman and Cutler LLP
111 West Monroe Street
Chicago, Illinois 60603

SECOND AMENDMENT TO MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES, RENTS AND ASSIGNED CONTRACTS AND FIXTURE FILING STATEMENT

Dated as of June 9, 2021

From

NEW ORGANIC DIGESTION LLC

(the *"Mortgagor"*)

To

WELLS FARGO TRUST COMPANY, NATIONAL ASSOCIATION, AS COLLATERAL TRUSTEE

(the *"Mortgagee"*)

**NOTICE: THIS INSTRUMENT SECURES FUTURE ADVANCES, THE PRIORITY OF WHICH DATE TO THE RECORDING DATE HEREOF.**

**Exhibit 5**

SECOND AMENDMENT TO MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES, RENTS AND ASSIGNED CONTRACTS AND FIXTURE FILING STATEMENT dated as of June 9, 2021 (this *"Amendment"*), from NEW ORGANIC DIGESTION LLC, a limited liability company organized under the laws of the State of Wisconsin (the *"Mortgagor"*), having its principal office at c/o Net Lease Capital Advisors, Inc., Ten Tara Boulevard, Suite 501, Nashua, New Hampshire 03062, to WELLS FARGO TRUST COMPANY, NATIONAL ASSOCIATION (formerly known as Wells Fargo Bank Northwest, N.A.), as Collateral Trustee, under that certain Collateral Trust Indenture dated as of September 28, 2017 (the *"Mortgagee"*) whose address is 299 South Main Street, MAC: U1228-051, Salt Lake City, Utah 84111.

WHEREAS, the Mortgagor is the record fee owner of the real estate described in **Exhibit B** attached hereto (the "*Mortgaged Property*") and made a part hereof and has a fee interest in certain improvements constructed thereon.

WHEREAS, the Mortgagor granted a security interest in its fee simple interest in the Mortgaged Property pursuant to that certain Mortgage, Security Agreement, Assignment of Leases, Rents and Assigned Contracts and Fixture Filing Statement dated September 28, 2017 and recorded in the land records of Brown County, Green Bay, Wisconsin as Document Number 2803294, as amended by that certain First Amendment to Mortgage, Security Agreement, Assignment of Leases, Rents and Assigned Contracts and Fixture Filing Statement dated as of February 15, 2019 and recorded in the land records of Brown County, Green Bay, Wisconsin as Document Number 2851278 (as amended, the "*Mortgage*").

The Mortgagor has assigning all of its right, title and interest in and to any existing or future lease of all or any portion of the Property from the Mortgagor to another party (or any *"lease"*) to the Mortgagee pursuant to the Mortgage and pursuant to that certain Assignment of Leases and Rents dated as of September 28, 2017 from the Mortgagor to the Mortgagee, as amended by that certain First Amendment to Assignment of Leases, Rents and Assigned Contracts dated as of the date hereof (as amended, the *"Assignment of Leases and Rents"*).

WHEREAS, as of the date hereof, the Mortgagor and the Mortgagee have agreed to waive certain Events of Default and amend certain terms of the Operative Agreements pursuant to that certain Second Omnibus Amendment dated as of the date hereof among the Mortgagor, the Mortgagee and certain other parties signatory thereto (the "*Second Omnibus Amendment*") and in connection with the amendments set forth in the Second Omnibus Amendment, certain amendments to the Mortgage are necessary.

WHEREAS, in order to finance certain ongoing operating expenses and certain capital expenditures of the Project, the Mortgagor has entered into that certain Promissory Note, dated as of September 18, 2020, as amended by that certain First Amendment to Promissory Note dated as of May 13, 2021 (the "*Bridge Note*") pursuant to which the Bridge Lender (as herein defined) has advanced $12,000,000 to the Mortgagor, and the Mortgagor, Bridge Lender and Mortgagee have entered into that certain Co-Lending and Subordination Agreement dated as of June 9, 2021 (the "*Co-Lender Agreement*") ") to govern the relationship between the parties with respect to the Bridge Note and the Operative Agreements; and

**Exhibit 5**

NOW THEREFORE, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereby covenant and agree to amend the Mortgage as follows (unless otherwise defined herein or unless the context otherwise requires, terms used herein shall have the meanings set forth in the Mortgage):

1. The Mortgaged Property is hereby amended as follows:

(a) The description of the Mortgaged Property attached to the Mortgage and hereto as **Exhibit A** is deleted in its entirety; and

(b) The description of the Mortgage Property is replaced with the **Exhibit B** Consolidated Mortgage Property description attached hereto and made a part hereof.

2. The Mortgage is hereby amended as follows:

(a) The definition of "Series A1 Notes" in the Recitals shall be deleted in its entirety and replaced with the following language effective from and after November 15, 2019 (such that the replacements set forth herein do not apply to any date prior to November 15, 2019):

"$67,500,000 original aggregate principal amount and $76,550,505 aggregate fully-accreted principal amount of 6.25% Series A1 Senior Secured Notes due on the Maturity Date"

(b) The definition of "Series A2 Notes" in the Recitals shall be deleted in its entirety and replaced with the following language effective from and after November 15, 2019 (such that the replacements set forth herein do not apply to any date prior to November 15, 2019):

"$10,500,000 original aggregate principal amount and $7,829,055 aggregate fully-accreted principal amount of 7.75% Series A2 Senior Secured Notes due on the Maturity Date"

(c) Recital E of the Mortgage shall be deleted in its entirety and replaced with the following language:

"E. The Regents of the University of California, an instrumentality of the State of California (*"UCal"*) and EEC Denmark Tenant LLC, a Delaware limited liability company (*"EEC Denmark"*) entered into that certain Base Contract for Sale and Purchase of Natural Gas dated as of August 12, 2016 (the *"Base Contract"*), together with that certain Special Provisions to the Base Contract (the "Special Provisions"), together with that certain Transaction Confirmation # 001 dated as of August 12, 2016 (the *"Transaction Confirmation"*), as amended by that certain Amendment 1 to Transaction Confirmation # 001 dated as of February 1, 2017 (the *"Amendment 1 to Transaction Confirmation"*), as assigned by EEC Denmark to the Mortgagor pursuant to that certain Assignment and Assumption of Agreement dated as of August 3, 2017 (the

*"Assignment"*), as further amended by that certain Amendment 2 to Transaction Confirmation # 001 dated as of September 27, 2017, together with an attached NAESB Credit Support Addendum (the *"Amendment 2 to Transaction Confirmation"*), together with that certain Letter dated as of September 26, 2017 waiving the credit rating requirements for the Letter of Credit issuer (the *"LOC Letter"*), together with that certain Transaction Confirmation # 001A dated as of December, 2020 and fully executed as of December 21, 2020, which amends and restates the Transaction Confirmation (the *"A&R Transaction Confirmation"*) (the Base Contract, the Special Provisions, the A&R Transaction Confirmation, the LOC Letter, and any further amendment, supplement or modification from time to time in accordance with the terms thereof, collectively, the *"UCal Contract"*)."

(d) Recital F of the Mortgage shall be deleted in its entirety and replaced with the following language:

"F. The Mortgagor has collaterally assigned all of its right, title and interest in the UCal Contract to the Mortgagee pursuant to that certain Collateral Assignment and Security Agreement, UCal dated as of September 28, 2017, as amended by that certain Amendment to Collateral Assignment and Security Agreement, UCal dated as of June 9, 2021 (as amended, the *"Collateral Assignment, UCal"*)."

(e) Recital G of the Mortgage shall be deleted in its entirety and replaced with the following language:

"G. The Mortgagor and American Foods Group, LLC (*"American Foods"*) are party to that certain Services Agreement dated as of January 29, 2021 (as amended, supplemented or modified from time to time in accordance with the terms hereof and thereof, the *"American Foods Contract"*)."

(f) Section 1 of the Mortgage shall be and hereby is amended by deleting the following definitions in their entirety and replacing with the following language:

*"Bridge Lender"* shall mean Cedar Holdings LLC, a Delaware limited liability company and its successors and assigns.

*"Bridge Note"* shall mean that certain Promissory Note dated as of September 18, 2020 made by the Borrower in the principal amount of $12,000,000 in favor of the Bridge Lender, as amended by that certain First Amendment to Promissory Note dated as of May 13, 2021.

*"Co-Lender Agreement"* shall mean that certain Co-Lending and Subordination Agreement dated as of June 9, 2021 among the Mortgagor, the Bridge Lender and the Mortgagee.

*"Consent to Assignment, UCal"* shall mean that certain Consent to Assignment and Agreement, UCal dated as of September 28, 2017, as replaced by that certain Consent to

Assignment and Agreement, UCal dated as of June 9, 2021 and each entered into by and among the Mortgagor, the Mortgagee, and UCal.

*"Escrow and Servicing Agreement"* shall mean that certain Amended and Restated Escrow and Servicing Agreement dated as of June 9, 2021 among the Mortgagor, Bridge Lender, the Mortgagee and the Escrow Agent.

*"Omnibus Amendments"* shall mean, collectively, (i) that certain Omnibus Amendment dated as of February 15, 2019 among the Mortgagor, the Mortgagee, the Escrow Agent and each Holder party thereto and (ii) that certain Second Omnibus Amendment dated as of the date hereof among the Mortgagor, the Mortgagee, the Escrow Agent and each Holder party thereto.

*"Operative Agreements"* shall mean, collectively, the Note Purchase Agreement, the Assignment of Leases and Rents, this Mortgage, the Hazardous Material Indemnity Agreement, the Indemnity and Guaranty Agreement, the Collateral Assignments, the Construction Escrow Agreement, the Escrow and Servicing Agreement, the Construction Completion Guaranty, the Collateral Trust Indenture, the Notes, the Co-Lender Agreement, the Omnibus Amendments and the Reaffirmations.

*"Principal Amortization Start Date"* shall mean September 15, 2022.

*"Reaffirmations"* shall mean, collectively, (i) that certain Reaffirmation of Indemnitor and Guarantor Obligations dated as of February 15, 2019 by Douglas F. Blough in favor of the Mortgagee and (ii) that certain Reaffirmation of Indemnitor and Guarantor Obligations dated as of June 9, 2021 by Douglas F. Blough in favor of the Mortgagee.

(g) Section 2.3(c) of the Mortgage shall be deleted in its entirety and replaced with the following language:

"(c) incur any Indebtedness other than (i) Indebtedness Hereby Secured, Taxes not yet due and payable and items being contested pursuant to Section 2.16(b), (iii) trade payables incurred in the ordinary course of business paid within sixty (60) days of date incurred, (iv) obligations under any lease, (v) obligations under the Assigned Contracts and the Other Contracts, (vi) obligations in connection with the development and construction of the Project, (vii) Indebtedness permitted by Section 2.17(h) or (i) hereof, and (viii) Indebtedness in connection with the Bridge Note in accordance with the Co-Lender Agreement;"

(h) Section 2.3(k) of the Mortgage shall be deleted in its entirety and replaced with the following language:

"(k) amend or modify the *"Special Purpose Entity"* provisions of the Organizational Documents of the Mortgagor, other than to allow for the Bridge Note and the other documents in connection therewith;"

**Exhibit 5**

(i) Section 2.17 of the Mortgage shall be amended by adding the following new subsections (j), (k) and (l) after subsection (i):

"(j) liens filed against the Injection Site by Settlers bank as evidenced by (i) the mortgage, dated April 18, 2019, recorded on April 29, 2019, as Document No. 2857416, (ii) the Assignment of Rents and Leases, recorded on December 22, 2016, as Document No. 2857418, (iii) the mortgage dated April 18, 2019, recorded on April 29, 2019, as Document No. 2857415, (iv) the Assignment of Rents and Leases, recorded on December 22, 2016, as Document No. 2857417 and (v) the Selective Business Security Agreement dated as of April 18, 2019 and all other documents in connection therewith (collectively, the "*Settlers Liens*"), but only for such time as amounts are owed to Settlers bank pursuant to that certain Long-Term Renewal Agreement dated as of July 1, 2020 among Northern Concrete Construction, LLC, Movin Materials, LLC, Douglas F. Blough and certain other guarantors in connection therewith, Settlers bank, the Company (in a limited capacity) and certain other parties (the "*Injection Site Settlement Agreement*");

(k) the UCC financing statement filed against Mortgagor by Settlers bank on April 25, 2019, as document no. 20190426000786-9 with the Wisconsin Department of Financial Institution and the UCC financing statement filed against Mortgagor by Settlers bank on April 25, 2019, as document no. 20190426000787-8 with the Wisconsin Department of Financial Institution, but only for such time as amounts are owed to Settlers bank pursuant to the Injection Site Settlement Agreement;

(l) subject to Section 2.32 hereof, the construction liens (i) filed by Richlen Excavating, as claimant, against New Organic Digestion LLC, as debtor, in the amount of $352,793.77, filed on 01/06/2020 as Case Number 2020CL000001 (the "*Richlen Excavating Lien*"), (ii) filed by Miron Construction Co., Inc., as claimant, against New Organic Digestion LLC, as debtor, in the amount of $241,096.73, filed on 04/09/2020 as Case Number 2020CL000011 (the "*Miron Construction Lien*"), and (iii) filed by Hurckman Mechanical Industries, Inc., as claimant, against New Organic Digestion LLC and Big Ox Energy, LLC, as debtors in amount of $921,690 filed on 6/17/2019 Case No.: 2019CL000019 (the "*Hurckman Lien*");"

(j) Section 2 of the Mortgage shall be and hereby is amended by adding new Section 2.32 with the following language:

"Section 2.32 *Post-Closing Covenants*.

(a) The Mortgagor hereby agrees to (i) secure release and termination of the Miron Construction Lien in the Brown County, Wisconsin land records upon receipt of the final payment of amounts owed to Miron Construction Co., Inc. in connection with the Project, (ii) make payments in the amount of $20,000 per month to Richlen Excavating or its assignees or designees and shall secure release and termination of the Richlen Excavating Lien in the Brown County, Wisconsin land records no later than December 31, 2021, and (iii) make payments in the amount of $30,000 per month to

Hurckman Mechanical Industries, Inc. ("*Hurckman*") or its assignees or designees in accordance with the written statement between the Mortgagor and Huckerman outlining the agreed-upon payment plan and shall secure release and termination of the Hurckman Lien in the Brown County, Wisconsin land records no later than August 31, 2021.

(b) At such time as the amounts owing to Settlers bank pursuant to the Injection Site Settlement Agreement are paid in full, the Mortgagor shall terminate or cause to be terminated and released all liens on the improvements and property described in **Exhibit C** attached hereto and all buildings, structures, improvements, pipelines and meters in, on or under such land (the "*Injection Site*") and the Mortgagor shall grant a security interest in the Injection Site to the Mortgagee, amend the Mortgage to include the Injection Site in the granting clauses and the definition of Mortgaged Property, and take all other actions and execute and deliver any and all other further assurances and documentation necessary to ensure the Injection Site is security for the Indebtedness Hereby Secured.

3. The covenants in Sections 2.28 and 2.29 of the Mortgage shall be waived only until the Principal Amortization Start Date, at which time and thereafter the Mortgagor shall comply with such provisions in their entirety.

4. The Mortgagor hereby represents and warrants to the Mortgagee that as of the date hereof each of the representations and warranties set forth in the Mortgage as amended hereby are true and correct. The Mortgagor hereby repeats and reaffirms all covenants and agreements contained in the Mortgage, each and all of which shall be applicable to all of the Indebtedness secured by the Mortgage as amended hereby and to all the properties, rights, interest and privileges subject to the Mortgage as amended hereby.

5. All of the provisions, stipulations, powers and covenants contained in the Mortgage shall stand and remain unchanged and in full force and effect except to the extent specifically modified hereby and shall be applicable to all of the Indebtedness, obligations and liabilities secured by the Mortgage as amended hereby.

6. The Mortgagor acknowledges and agrees that the Mortgage as amended hereby is and shall remain in full force and effect, and that the Mortgaged Property as consolidated is and shall remain subject to the lien and security interest granted and provided for by the Mortgage for the benefit and security of all the Indebtedness hereby secured. Without limiting the foregoing, the Mortgagor hereby agrees that this Amendment shall constitute and be, among other things, an acknowledgment and continuation of the rights, remedies, lien and security interest in favor of Mortgagee, and of the obligations of the Mortgagor to the Mortgagee, which exist under the Mortgage as amended hereby.

7. Except as modified herein or in the Second Omnibus Amendment, the other Operative Agreements and all of the terms and provisions thereof shall remain unmodified and in full force and effect as originally written.

8. Wherever herein any of the parties is referred to, such reference shall be deemed to include the successors and assigns of such party; and all the covenants, promises and agreements by or on behalf of the Mortgagor, or by or on behalf of the Mortgagee, or by or on behalf of the holder or holders of the Indebtedness hereby secured contained in the Mortgage as amended hereby shall bind and inure to the benefit of the respective successors and assigns of such parties, whether so expressed or not.

9. This Amendment may be executed, acknowledged and delivered in any number of counterparts, each of such counterparts constituting an original but all together only one Amendment. The failure of any party hereto to execute this Amendment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

10. This Amendment shall be governed by and construed in accordance with the applicable federal laws and laws of the state where the Mortgaged Property is located, without reference or giving effect to any choice of law doctrine.

11. This Amendment, together with the covenants and warranties therein contained, shall inure to the benefit of Mortgagee and its successors and assigns, including any subsequent holder of the Mortgage, and shall be binding upon Mortgagor its heirs, executors, administrators, successors and assigns and any subsequent owner of the Mortgaged Property.

[SIGNATURES ON NEXT PAGE]

**Exhibit 5**

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed, all as of the day and year first above written.

NEW ORGANIC DIGESTION LLC,
a Wisconsin limited liability company

By: ______________________
Name: Douglas F. Blough
Title: Manager

[Signature Page to Second Amendment to Mortgage, Security Agreement, Assignment of Leases, Rents and Assigned Contracts and Fixture Filing Statement]

**Exhibit 5**

STATE OF New Hampshire
) SS
COUNTY OF Hillsborough

I, ANDRA M. FOSTER, a Notary Public in and for the County and State aforesaid, do hereby certify that Douglas F. Blough to me known, who declared and acknowledged that he is the Manager of NEW ORGANIC DIGESTION LLC, a limited liability company organized under the laws of the State of Wisconsin, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that he, being thereunto duly authorized, signed and delivered the said instrument as the free and voluntary act of said limited liability company and as his own free and voluntary act, for the uses and purposes therein set forth.

Given under by hand and notarial seal this 17 day of APRIL, 2021.

[signature]
Notary Public

Printed Name: ANDRA M FOSTER

(SEAL)

ANDRA M FOSTER
Notary Public - New Hampshire
My Commission Expires Dec 7, 2021

Commission expires:

[Signature Page to Second Amendment to Mortgage, Security Agreement, Assignment of Leases, Rents and Assigned Contracts and Fixture Filing Statement]

**Exhibit 5**

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed, all as of the day and year first above written.

WELLS FARGO TRUST COMPANY, NATIONAL ASSOCIATION, as Collateral Trustee

By: ______________________________
Name: Todd Duncan
Title: Vice President

[Signature Page to Second Amendment to Mortgage, Security Agreement, Assignment of Leases, Rents and Assigned Contracts and Fixture Filing Statement]

**Exhibit 5**

STATE OF )
) SS
COUNTY OF )

On April 8, 2021, personally appeared before me Todd Duncan on who being duly sworn did say, for himself, the said Todd Duncan is the Vice President of Wells Fargo Trust Company, National Association and that the within and foregoing instrument was signed in behalf of said association by authority of a resolution of its Board of Directors, and said Todd Duncan duly acknowledged to me that said association executed the same. ______________________

Notary Public

Printed Name: Cristina Bejar

(SEAL)

NOTARY PUBLIC
CRISTINA BEJAR
COMM. # 713539
MY COMMISSION EXPIRES
AUGUST 25, 2024
STATE OF UTAH

Commission expires:

**Exhibit 5**

**EXHIBIT A**

**ORIGINAL LEGAL DESCRIPTION**

Parcel I:
Lot 1, Certified Survey Map No. 8591 in Volume 60 Certified Survey Maps, Page 361, recorded September 16, 2015 as Document No. 2719021, all of Lot 1, Lot 2, and Lot 3 of Certified Survey Map Volume 55 Page 164 #7976 and part of the NE-SW of Section 35, Township 22 North, Range 22 East, Town of New Denmark, Brown County, State of Wisconsin.

Tax Key No: ND-756-2
Address: 6541-6587 CTH R

Parcel II:
Lot 2, Certified Survey Map No. 8591 in Volume 60 Certified Survey Maps, Page 361, recorded September 16, 2015 as Document No. 2719021, all of Lot 1, Lot 2, and Lot 3 of Certified Survey Map Volume 55 Page 164 #7976 and part of the NE-SW of Section 35, Township 22 North, Range 22 East, Town of New Denmark, Brown County, State of Wisconsin.

Tax Key No: ND-756-1
Address: 6601 CTH R

Surveyed as:
All of Lot 1 and Lot 2 of Certified Survey Map Volume 60, Page 361, #8591, being part of the Northeast 1/4 of the Southwest 1/4 of Section 35, Township 22 North, Range 22 East, in the Town of Denmark, Brown County, Wisconsin, described as; Commencing at the West 1/4 corner of Section 35; thence along the Northerly line of the Southwest 1/4 South 89 deg. 44'00" East 2,119.72 feet to the point of beginning; thence continuing along said line South 89 deg. 44'00" East 570.00 feet; thence South 0 deg. 37'26" West 1,179.63 feet; thence South 36 deg. 31'57" West 45.10 feet to the Northerly line of CTH "R", thence along said line North 53 deg. 15'02" West 414.34 feet; thence 332.37 feet along the arc of a 2,914.79 foot radius curve to the left whose long chord bears North 56 deg. 31'02" West 332.19 feet; thence North 59 deg. 47'02" West 335.65 feet; thence North 30 deg. 48'42" East 770.01 feet to the point of beginning.

## Exhibit 5

### EXHIBIT B

### CONSOLIDATED LEGAL DESCRIPTION

Lot 1 of Certified Survey Map No. 9113, said map recorded on October 9, 2019, as Document No. 2878788, being all of Lot 1 and Lot 2 of Certified Survey Map, Volume 60 Page 361 #8591, being part of the Northeast of the Southwest of Section 35, Town 22 North, Range 22 East, Town of New Denmark, Brown County, Wisconsin.

**Exhibit 5**

## EXHIBIT C

### INJECTION SITE LEGAL DESCRIPTION

That part of the Southwest 1/4 of the Southwest 1/4 of Section 21, Township 22 North, Range 22 East, in the Village of Denmark, Brown County, Wisconsin, being and lying West of U.S. Highway 141 as it existed on August 26, 1955, AND Part of the Southwest 1/4 of the Southwest 1/4 of Section 21, Township 22 North, Range 22 East, in the Village of Denmark, Brown County, Wisconsin described in Document No. 2259769, excepting therefrom that part thereof described in Volume 329 of Deeds on Page 143 and excepting that part thereof used for highway purposes. Also excepting part described in Jacket 5779 of records, image 26 as Document No. 988395.

EXCEPTING THEREFROM that part located and described as follows: Commencing at the Northwest corner of the said Southwest 1/4 of the Southwest 1/4, thence South 0°32' East 262.60 feet; thence North 89°01' East 521.9 feet to the centerline of old U.S. Highway 141; thence Northwesterly along the centerline of old U.S. Highway 141; 267.1 feet to the North line of the aforementioned Southwest 1/4 of the Southwest 1/4; thence South 89°01' West 473.5 feet to the point of commencement.