**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

---

**In re:**

| | |
|---|---|
| **NLC Energy Denmark LLC,** | **Case No. 25 -** |
| | **Chapter 11 Proceedings** |
| **Debtor.** | |

---

**EMERGENCY MOTION TO SET PREPACKAGED SCHEDULING FOR PLAN CONFIRMATION AND GRANT RELATED RELIEF REGARDING THE PREPACKAGED CASE, WITH A REQUEST THIS MOTION BE HEARD ON OR BEFORE AUGUST 20, 2025**

---

NLC Energy Denmark LLC (the "Debtor"), moves, pursuant to §§ 105, 341, 345, 363 and 521, Fed. R. Bankr. P. 1007(c) and 6004(a), and the other authority cited below, for the following relief:

**Relief Requested**

(A) Enlargement of time for the Debtor (1) to file its schedules and statement of financial affairs, (2) for the U.S. trustee to convene the section 341 meeting of creditors (the "341 Meeting") and to hold the initial debtor interview ("IDI"), and (3) for the Debtor to file monthly operating reports ("MORs") until after the confirmation hearing with these requirements to be waived if the Prepackaged Plan of Reorganization dated August 14, 2025 (the "Plan") is confirmed by October 15, 2025. (Collectively, the "Enlargement Relief.")

(B) Approval of the Debtor maintaining its existing cash management system, including its existing bank accounts (the "Cash Management System Relief").

(C) Approval of deadlines for objections and other pleadings leading to confirmation of the Plan (the "Confirmation Scheduling").

(D) Setting a hearing to approve the Debtor's prepetition solicitation procedures at the same time as the hearing on confirmation of the Plan (the "Solicitation Procedures Approval Relief"). (The Debtor requests that the hearing be set for September 30, 2025, at 10:00 a.m., or another convenient time for the Court near this targeted date which is the same time and date being requested for the Confirmation Hearing.)

(E) Setting the Confirmation Hearing as the time to consider approval of the adequacy of the information disclosed to solicit acceptances of the Plan as complying with applicable nonbankruptcy law, retroactive to the date of the prepetition solicitation ("Approval of the Disclosure Statement").

(F) Setting a hearing on or about September 30, 2025, as the time to consider confirmation of the Plan ("Confirmation Hearing").

(G) Approval of the notice that is attached as Exhibit A to provide creditors and interested parties with notice of the commencement of the case and noticing procedures (the "Case Notice Relief").

(H) Setting the Confirmation Hearing as the time to consider the Debtor's motion to reject the UCal Contract and to estimate the claim of UCal for purposes of voting on the Plan only (the UCal Rejection Relief").

**Documents Supporting this Motion**

The Debtor supports this motion by incorporating by reference the Declaration of Welles Hatch in Support of the Debtor's First Day Motions filed on the Petition Date (the "Hatch Declaration") and the Disclosure Statement for Prepackaged Plan of Reorganization of NLC

Energy Denmark LLC filed on the Petition Date (the "Disclosure Statement"). They contain factual support for this motion. A draft proposed order is being filed with this motion as an attachment.

**Information Provided to the U.S. Trustee Before the Petition Date**

The Debtor shared pre-filing drafts of this motion (including the notice, Exhibit A), the proposed order, the Hatch Declaration, the prepetition wage motion, the Plan, the Disclosure Statement, the motion to modify the stay and provide adequate protection for Senior Secured Lenders, the motion to provide utilities with adequate assurance of payment, the motion to reject UCal, the motion to estimate UCal's claim and the application to retain Kerkman & Dunn, and the ***ex parte*** motion for an emergency hearing with the Office of the U.S Trustee on August 15, 2025.

In further support of this motion, Debtor states:

**Jurisdiction**

1. The Debtor filed its chapter 11 case on August 16, 2025 (the "Petition Date").

2. The Debtor continues to manage its business and affairs under §§ 1107(a) and 1108 of the Bankruptcy Code.

3. The Court has jurisdiction over this matter under 28 U.S.C. §§ 1344(a) and 157(a), and the order of reference filed in this district entered under § 157(a).

4. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). It concerns the administration of the Debtor's estate under 28 U.S.C. § 157(b)(2)(A).

**Background Supporting the Prepackaged Plan Relief Sought**

5. The Debtor seeks to move this prepackaged case expeditiously and at minimal cost through the chapter 11 process without infringing on the rights of creditors. All creditors are treated

as unimpaired under the Plan except two non-insider groups: the Senior Secured Lenders and UCal.[1] Both groups are sophisticated enterprises and have detailed information on the Debtor.

6. The Debtor provided the Senior Secured Lenders with early drafts of the Plan and Disclosure Statement. Comments received from the Senior Secured Lenders were generally incorporated into pleadings. On or before August 14, 2025, the Debtor also provided the Senior Secured Lenders with final versions of the Plan and Disclosure Statement, and all pleadings filed to be filed on the Petition Date, including this motion and the proposed order granting it. By August 14, 2025, the Senior Secured Lenders provided their ballots unanimously approving Plan and the treatment of their secured and unsecured claims.

7. The Debtor served UCal with the Plan, Disclosure Statement, a ballot and notice of deadlines by mailing them on August 14, 2025. (See Certificate of Prepetition Compliance Requirements.) The Debtor also served UCal with copies of other pleadings filed on the Petition Date as provided in the certificates of service filed. The Plan can be confirmed regardless of UCal's acceptance or rejection of the Plan. All impaired classes accepted the Plan, including one impaired class without including the acceptance of the Plan by any insider. Even if UCal rejects the Plan the Debtor can confirm it by acceptance of all required classes or by cramdown if the Court estimates UCal's claim in an amount that is higher than one-third of all unsecured claims in Class 3.

8. Prepackaged plans are rare in Wisconsin. The Debtor's counsel is only aware of one previously, *In re Anchor BankCorp Wisconsin Inc.*, Case No. 13-14003-rdm, filed in the Western District on August 12, 2013. In districts where prepacked cases are filed more regularly, the courts have adopted local rules for them. The Debtor's counsel consulted the Amended

[1] Terms not defined in this motion have the definitions in the Hatch Declaration, Disclosure Statement or Plan.

Procedural Guidelines for Prepackaged Chapter 11 Cases from the Bankr. S.D.N.Y. (2/1/24 version), https://www.nysb.uscourts.gov/sites/default/files/m621.pdf (the "SDNY Prepackaged Guidelines") as well as the pleadings from the *Anchor BankCorp* case for guidance in this case.

9. The Bankruptcy Code clearly envisions prepackaged plans and the benefits of their expedited process. Section 1121(a) expressly provides that a debtor may file a plan with its petition. Section 1126(b) provides that votes solicited prepetition may be counted if the solicitation complied with any applicable nonbankruptcy Law. This permits solicitation of acceptances of a proposed plan without first having to obtain court approval of a disclosure statement, avoiding the delay attendant with obtaining court approval of the disclosure statement. Additionally, the solicitation may continue after the petition date if solicitation of the creditors began before the petition date. § 1125(g) ("an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law"). The Debtor has complied with applicable nonbankruptcy law and solicited votes before the commencement of the case.

**Overview of Business and Financial Problems Leading to Chapter 11 Filing**

10. The Hatch Declaration contains background on the Debtor's business and events leading to the chapter 11 filing. They are incorporated into this motion by reference.

**Prepackaged Case Procedural Disclosures**

11. **Shortening of Notice Periods.** The Debtor seeks to shorten the time for parties ***unaffected*** by the Plan to object to the adequacy of the Disclosure Statement and confirmation of the Plan from 28 days to 21 days. *See, infra*, at ¶s 48, 50. The Debtor does not seek to reduce any

other periods specified in the Bankruptcy Code, Bankruptcy Rules or Local Rules.

12. **Cramdown Relief.** The Debtor does not intend to seek confirmation of the Plan utilizing the cramdown provisions under § 1129(b) of the Bankruptcy Code. However, if the Court determines that UCal's claim exceeds one-third of the Class 3 unsecured claims in the estimation motion filed on the Petition Date, the Debtor will seek to cramdown the plan on Class 3 unsecured creditors under § 1129(b)(2)(B) utilizing the new value exception to the absolute priority corollary. The other two impaired classes, the Senior Secured Lenders and the equity security holder of the Debtor, have unanimously accepted the Plan.

13. **Acceptance of Ballots After the Voting Deadline.** The Debtor does not anticipate requesting the Court to permit the acceptance of ballots after the voting deadline.

14. **Scheduling of Hearing.** By this motion, the Debtor is requesting an order scheduling a hearing on confirmation of the Plan and the Debtor's compliance with §§ 1125(g), 1126(b)(2) and 1125(a).

15. **Unwritten Objections to Confirmation or Compliance with § 1126(b).** The Debtor is not aware of any unwritten objections and does not seek a discovery conference.

16. **Bar Date or Due Process Order.** The Debtor will not be seeking a bar date or due process order.

**Legal Authority for Relief Requested**

**(A) Enlargement Relief**

**(1) Enlargement of the time to file schedules and statements**

17. Section 521(a)(1)(B) of the Bankruptcy Code provides that the Debtor shall file "***unless the court orders otherwise*** – (i) a schedule of assets and liabilities; (ii) a schedule of

current income and current expenditures; (iii) a statement of the debtor's financial affairs …." (Emphasis added.)

18. Fed. R. Bankr. P. 1007(c) further provides that "any extension of time to file schedules, statements, and other documents … may be granted only on motion for cause shown …."

19. The Debtor seeks to confirm its Plan in six weeks. If confirmation does not occur within that timeframe, the Court can determine at the Confirmation Hearing in late September a reasonable time under the circumstances, when schedules, statement of financial affairs and other statements normally required under the Bankruptcy Code must be filed. However, if the Court confirms the Plan, the Debtor requests a final waiver of the requirement to file the schedules, statement of financial affairs and other statements.

20. Attached as **Exhibit 1** to the Disclosure Statement are internally general financial statements, including a balance sheet, profit and loss statement, and statement of cash flows as of June 30, 2025, as well as historical information for 2022, 2023 and 2024. The financial statements are in conventional accounting format.

21. Filing this case imposes substantial burdens on the Debtor's management team. The Debtor has limited resources. Management must comply with multiple regulatory requirements because the Debtor's business involves animal and food waste. This chapter 11 case compresses bankruptcy procedural actions that are normally done over six months into one month. Preparing schedules and statements will require management to take financial information that is reported in standard accounting format and convert it into the bankruptcy one-size fits all format that will not benefit creditors or interested parties. Creditors affected by the case and the Plan, namely the

Senior Secured Lenders and UCal, have seen financial information in format included in **Exhibit 1.** Because the Debtor has filed a Disclosure Statement with extensive information, preparing the schedules, statement of financial affairs and statements will not benefit anyone affected by the Debtor's chapter 11 restructuring.

22. The filing of schedules and statements permit interested parties to understand and assess the debtor's assets and liabilities and thereafter negotiate and confirm a plan of reorganization. *Nelson v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 216 B.R. 175, 180 (Bankr. E.D.Va.1997)

23. In this case, the Debtor has provided the Senior Secured Lenders and UCal with information in the ordinary course of their dealings and before the Petition Date in a Disclosure Statement. Additionally, the Debtor has negotiated the Plan with the Senior Secured Lenders. Accordingly, the primary reasons for filing of schedules and statements do not exist in this case. Requiring the Debtor to file them would only impose an additional administrative burden on and add expense to the Debtor's estate, without any corresponding benefit to parties in interest.

24. The request for a waiver of the requirement to file the schedules and statements is appropriate in a prepackaged case. *See*, SDNY Prepackage Guidelines, p. 11, Section VI.C.4. In several prepackaged chapter 11 cases, bankruptcy courts have granted relief like that requested in this case. *See, e.g.*, *In re Maremont Corp.,* 601 B.R. 1, 58 (Bankr. D. Del. 2019). *See also*, *In re Anchor Bancorp Wisconsin Inc.,* Case No. 13-14003-rdm (Bankr. W.D. Wis. Aug 14, 2013, Order, Dkt. No. 45, at ¶ 2) (extending to the plan confirmation date); *In re Central European Distribution Corp., et al.,* Case No. 13-10738 (CSS) (Bankr. D. Del. Apr. 25, 2013) (granting 44-day extension and waiver); *In re LCI Holding Company Inc.,* Case No. 12-13319 (KG) (Bankr. D. Del. Jan. 10,

2013) (granting 30-day extension and waiver); *In re Vertis Holdings, Inc.*, Case No. 10-16170 (ALG) (Bankr. S.D.N.Y. Nov. 19, 2010) (granting extension until after the confirmation hearing and waiving requirement upon confirmation of a plan); *In re Metro-Goldwyn-Mayer Studios, Inc.,* Case No. 10-15774 (SMB) (Bankr. S.D.N.Y. Nov. 8, 2010) (granting 60-day extension and waiver).

25. The Debtor respectfully submits that "cause" exists for the enlargements of time for it to file schedules, the statement of financial affairs and other statements under the circumstances of this case and the absence of any prejudice to any interested party. Subject however, to a final waiver of the requirement that the schedules, statements of financial affairs and other statements be filed if the Plan is confirmed in late September or early October.

**(2) Enlargement of the time to conduct the 341 Meeting and IDI**

26. Section 341(a) of the Bankruptcy Code requires the U.S. trustee to convene and preside at a meeting of creditors.

27. Section 341(e) of the Bankruptcy Code, however, provides the following exception to such provisions:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

28. The Debtor meets the requirements of § 341(e). It has filed the Plan and solicited acceptances prior to the Petition Date.

29. The request for a delay in setting a 341 meeting or dispensing with it is often done in a prepackaged case. *See*, SDNY Prepackage Guidelines, p. 17, Section VII. Bankruptcy courts have granted similar relief, and section 341(e) establishes that such relief is appropriate in the

context of a prepackaged bankruptcy case where solicitation has been completed prior to the petition date. *See, e.g., In re Maremont Corp.,* 601 B.R. 1, 58 (Bankr. D. Del. 2019); *In re Anchor Bancorp Wisconsin Inc.,* Case No. 13-14003-rdm (Bankr. W.D. Wis. Aug 14, 2013 Order, Dkt. No. 45, at ¶ 2) (extending to the plan confirmation date); *In re Central European Distribution Corp., et al.*, Case No. 13-10738 (CSS) (Bankr. D. Del. Apr. 25, 2013) (permitting U.S. trustee to refrain from holding meetings under sections 341(a) and 341(b)); 3-341 Collier on Bankruptcy, p. 341.05A ("This provision is intended to expedite prepackaged chapter 11 cases in which there exist from the outset sufficient votes to confirm the plan").

30. Accordingly, the Debtor respectfully requests that the Court direct the U.S. trustee to defer convening the 341 Meeting pending confirmation of the Plan, and furthermore that this Court dispense with the requirement to convene the 341 Meeting if the Plan is confirmed in mid-September.

31. Similarly, the Debtor requests that the Court order the IDI conducted by the U.S. trustee be enlarged until after the Confirmation Hearing or dispensed with if the Plan has been confirmed by late September or early October 2025. On or shortly after the Petition Date, the Debtor provided the U.S. trustee with information on prepetition bank accounts and the receipt and verification of having received, read and understanding the Chapter 11 Operating Instructions and Reporting Requirements issued by the Office of the United States Trustee (the "UST Guidelines"). These are usually provided at or shortly after the IDI. The Debtor will provide the proof of insurance form shortly. In addition, the IDI provides the U.S. Trustee's Office with an opportunity to obtain an understanding of the case. Given the Plan, Disclosure Statement and extensive pleadings filed on the Petition Date and the providing of draft motions before the Petition

Date, this reason for the IDI has been met. Further, an explanation of the chapter 11 process that usually occurs at the IDI by the U.S. trustee is not necessary. The Debtor's management is sophisticated and many of the usual requirements that are explained during the IDI will not apply if the Court grants the relief in this motion. Given the compressed timeframe sought for this case, attending the IDI is not a good use of the management's precious time resources.

(3) **Enlargement of the time to file monthly operating reports and waiver of them if the Plan is confirmed in mid-September**

32. The Debtor also seeks authority to waive the requirement to file monthly operating reports. As set forth in the Guidelines, a debtor is required to file monthly operating reports until the chapter 11 case is confirmed, converted, or dismissed. Rule 2015(a)(6) permits a court to waive this requirement as to small business cases. However, courts had also waived it for regular chapter 11 cases. *See, In re 3C's Blessing, Inc.*, 598 B.R. 385, 388 (Bankr. S.D.N.Y. 2019) ("While courts in prior cases in this District have applied section 105 of the Bankruptcy Code to excuse compliance with various requirements of the UST Guidelines ….")

33. As noted above, the Debtor has limited resources and needs to devote such resources to preparing for confirmation of the Plan in a condensed period. The Debtor is initially spending funds provided as member contributions. In one sense, the Debtor is not spending assets of estate but of its equity member. The first operating report will be due on October 21 – which is likely after the Confirmation Hearing. The Debtor is seeking to have the Confirmation Hearing on the Plan on September 30, 2025. To require the Debtor to begin preparing for filing monthly operating reports would be unnecessarily burdensome to the Debtor, its management and its estate. Nevertheless, the Debtor fully intends to complete and file quarterly fee statements, and to pay any outstanding quarterly fees owed to the U.S. Trustee.

**(B) Cash Management System Relief - cause exists to maintain the existing cash management system and prepetition bank accounts (interim and final relief requested)**

34. The Guidelines require that all prepetition bank accounts of a debtor must be closed and new debtor-in-possession accounts opened.

35. The Debtor has closed all but one operating account at Citizens Bank, N.A. ("Citizens"). It is the general operating account and has a control agreement to reflect the interest of the Senior Secured Lenders ('576).

36. It would be very disruptive to the Debtor's business to have to close this account and open a new one. The Debtor pays bills electronically. It receives funds electronically. Closing out the account would likely cause an interruption and delay receiving funds. The time and effort to transfer the electronic transactions for the expected 6 weeks in chapter 11 would tax the staff, which is already spread thin.

37. Section 363(c)(1) authorizes a debtor-in-possession to use "property of the estate in the ordinary course of business, without notice or a hearing." The purpose of § 363(c)(1) is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3rd Cir. 1992). Included within the purview of § 363(c) is the ability to continue "routine transactions" stemming from a debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp.*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, to minimize the disruption caused by the chapter 11 filing and to maximize the value of the Debtor's estate, the Debtor requests authority to utilize its cash management system and existing prepetition bank account. Additionally, the Debtor seeks to be in chapter 11 for a brief period. The expense of

converting the cash management system and new bank account to a new system and account is an unnecessary expense.

38. To the extent the cash management system is deemed to be beyond the ordinary course of the Debtor's business, such use is permitted by §§ 363(b)(1) and 105(a) of the Bankruptcy Code. Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) provides that the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

39. Courts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.,* 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3rd Cir. 1993).

40. Bankruptcy courts routinely grant a chapter 11 debtor authority to continue utilizing existing cash management systems and treat requests for such authority as a relatively "simple matter[.]" *In re Baldwin-United Corp*., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see also, In re King Mountain Tobacco Co. Inc.*, 623 B.R. 323, 332 (Bankr. E.D. Wash. 2020).

41. In this case, requiring the Debtor to close out its prepetition account would be disruptive to the Debtor's business and would likely cause an interruption and delay in the receipt of funds. The Debtor therefore seeks waiver of the Guidelines requiring the Debtors to close the prepetition account and continued use of its cash management system. The Debtor requests that due to the short duration of the case that it not be required to order new checks to add the debtor-

in-possession and case number to each check.

42. The Debtor requests that the Court grant the relief related to the cash management system on an interim basis until the Confirmation Hearing. If the Court does not confirm the Plan at that hearing, the Court can address whether all or a portion of the relief requested as part of the cash management system relief should be continued.

**(C) Confirmation Scheduling Relief – the dates and deadlines requested are supported by law**

**(1) Approval of the September 12, 2025, deadline for UCal to deliver ballots accepting or rejecting the Prepack Plan**

43. Rule 3018(b) imposes two requirements for binding acceptances or rejections solicited before the commencement of the case. First, the proposed plan must have been transmitted to substantially all creditors of the same class. Second, the time prescribed for accepting or rejecting the plan was not "unreasonably short."

44. In this case, all creditors in Classes 1 and 3 received a ballot and the same Plan. The first requirement is met.

45. Rule 3018(a) provides the Court with discretion and flexibility to set a date. The Southern District of New York considers a 21-day voting period as reasonable. SDNY Prepackage Guidelines, p. 18, Section IX.A.3. Under any of the Rules, the longest date for notice is 28 days by mailing. See, Rule 2002(b). The Debtor has used 29 days here. This is not an "unreasonably short" time for UCal to deliver its ballot. The Senior Secured Lenders delivered their ballots before the Petition Date.

**(2) September 16, 2025, as the date the report on balloting must be filed**

46. There is no specific rule on when the report on balloting is due. However, filing

such report is required for confirmation of a plan. The Debtor filed a report on balloting on the Petition Date reflecting the acceptances and rejections of the Senior Secured Lenders. The Debtor anticipates filing a supplemental balloting report after the 28-day period runs for UCal to file its ballot within two court days after UCal's ballot is due. Two court days after ballots are due is a reasonable time for a supplemental report on balloting to be filed.

**(3) September 12, 2025, as the deadline to object to the adequacy of the Disclosure Statement**

47. The Debtor is providing UCal with 29 days to object to the adequacy of the information provided for it to make an informed decision on whether to accept or reject the Plan – the Disclosure Statement. This is one day more than the period required for filing objections to the adequacy of the information in a disclosure statement sought to be approved in connection with solicitation of acceptances or rejections after the commencement of a chapter 11 case. Fed. R. Bankr. P. 2002(b).

48. As for parties unaffected by the case or the Plan, the Debtor requests that the same date of September 12, 2025. Because notice will be sent a week later, projected to be on August 22, creditors that are unaffected by the Plan or the case will receive 21 days' notice of the date to object. The Debtor requests that the time be reduced to coincide with objections still being due on September 12, 2025, as permitted by Rule 9006(c). The Debtor requests that the Court confirm approval of this objection date.

**(4) September 12, 2025, as the last date to file objections to confirmation of the Plan**

49. The Debtor is providing UCal and the Senior Secured Lenders with 29 days to object to confirmation of the Plan. This is one day more than the period required for filing

objections to the adequacy of the information in a disclosure statement sought to be approved in connection with solicitation of acceptances or rejections after the commencement of a chapter 11 case. Fed. R. Bankr. P. 2002(b).

50. As for parties unaffected by the case or the Plan, the Debtor requests that the same date of September 12, 2025. Because notice will be sent a week later, projected to be on August 22, creditors that are unaffected by the Plan or the case will receive 21 days' notice of the date to object. The Debtor requests that the time be reduced to coincide with objections still being due on September 12, 2025, as permitted by Rule 9006(c). The Debtor requests that the Court confirm approval of this objection date.

**(5) September 22, 2025, as the date for the Debtor to respond to any objections to confirmation, the disclosure statement or other motions**

51. The Debtor will respond to objections to confirmation of the Plan or similar pleadings that could prevent confirmation of the Plan, the Disclosure Statement or other motions within a short timeframe: 10 days after the objections are due and 8 days before the Confirmation Hearing if the Court holds it on September 30, 2025. The Debtor requests that the Court set September 22, 2025, as the date for the Debtor to respond to objections to confirmation, the disclosure statement or other motions affecting confirmation of the Plan.

**(6) September 22, 2025, as the date by which to request confirmation without a hearing**

52. The Debtor believes the case could possibly be confirmed with UCal's acceptance. If this is possible, the Debtor will seek to promptly have the Plan confirmed. Rule 3020 states that "[t]he court shall rule on confirmation of the plan after notice and hearing …." The phrase, "after notice and a hearing" is sufficient elastic to permit action without an actual hearing. § 102(1)(B).

53. The Debtor therefore requests that the Court set a date by which it may make such a request and provide supporting evidence and law.

**(D) Solicitations Procedures Relief - the Debtor's request that its prepetition solicitation procedures, retroactive to the date of solicitation, be approved at the Confirmation Hearing**

54. The Debtor solicited acceptances to the Plan prepetition as permitted by § 1126(b). It continued soliciting acceptances at to UCal after the Petition Date as permitted by § 1125(g). The Debtor filed the Plan with its petition. § 1121(a).

55. The Debtor provided adequate information under applicable nonbankruptcy law in the form of the Disclosure Statement with the Plan to Creditors at the time the Debtor solicited their acceptance for the Plan. *See, infra*, ¶s 60 – 68.

56. The Debtor used the amounts on its books and records for the two insider creditors in Class 3 as of July 31, 2025, as the "record date" for determining the amount of the claims and, as for UCal, the amount sought to be approved by the motion to determine an estimated claim amount for voting purposes. For the Senior Secured Lenders, Debtor used the amounts due as of the Petition Date. No other votes were solicited. This complies with Fed. R. Bankr. P. 3018(b).

57. Except for the ballot from UCal, all ballots from creditors eligible to vote were received before the Petition Date after they had received the Plan and Disclosure Statement. The Debtor sent the same Plan, Disclosure Statement, form of ballot and notice of deadlines for objections related to confirmation to all creditors entitled to vote on the Plan. The Debtor provided UCal with 29 days after mailing to return its ballot. Rule 3018(a) provides the Court with discretion and flexibility to set a date. The Bankruptcy Court for the Southern District of New York considers a 21-day voting period as reasonable. SDNY Prepackage Guidelines, p. 18, Section IX.A.3. This

is not an "unreasonably short" time for the Senior Secured Lenders or UCal to return their ballots.

58. The Debtor provided notice that objections to (i) the adequacy of the information provided for them to make an informed decision on whether to accept or reject the Plan in the Disclosure Statement and (ii) confirmation of the Plan must be filed 28 days after notice was given. This complies with Rule 2002(b)(1) and (2). The Bankruptcy Court for the Southern District of New York considers a 28 days' notice of these objection deadlines as reasonable. SDNY Prepackage Guidelines, p. 20, Section X.A.(ii).

59. The Debtor requests that the Court consider approval, retroactive to the date of solicitation, the procedures used by the Debtor to solicit acceptances to the Plan as complying with applicable nonbankruptcy law and being reasonable at the Confirmation Hearing.

**(E) Approval of the Disclosure Statement – the Debtor requests that the adequacy of the information disclosed to solicit acceptances of the Plan in the Disclosure Statement, retroactive to the solicitation date, be approved at the Confirmation Hearing.**

60. To solicit acceptances to the Plan before the Petition Date, the Debtor must comply with applicable nonbankruptcy law. § 1125(g). The Debtor is not a publicly traded company. No SEC requirements apply to the Debtor in soliciting acceptances to the Plan.

61. No applicable nonbankruptcy law governs solicitation of acceptances of the Prepackaged Plan. Accordingly, Section 1126(b)(2) requires that disclosure of adequate information, as defined in Section 1125(a), be provided with, or before, the solicitation of acceptances of the Plan.

62. The Debtor provided the Disclosure Statement with the Plan. The Disclosure Statement contains adequate information under § 1125(a). "Adequate information" is a flexible concept. *In re St. Margaret's Health - Peru*, 659 B.R. 691, 696 (Bankr. N.D. Ill 2024) ("The

Disclosure Statement must provide information with sufficient detail, as far as is reasonably practicable, to permit an 'informed judgment' by those parties that will vote on the Plan."); *In re Bellows*, 554 B.R. 219, 225 (Bankr. D. Alaska 2016) ("[T]he determination of what is adequate information is subjective and made on a case-by-case basis. This determination is largely within the discretion of the bankruptcy court." [Citations omitted.]) The Disclosure Statement can be tailored to the needs of the creditor from whom the acceptance is solicited.

63. Here, the Debtor regularly supplies the Senior Secured Lenders with quarterly financial information. Additionally, the Debtor has provided the Senior Secured Lenders with additional information, including a valuation of the Debtor's assets since disclosing the possible chapter 11 filing. The Senior Secured Lenders were also provided with a draft plan and disclosure statement for comments.

64. Likewise, the Debtor has supplied UCal with information when the Debtor approached UCal several times to re-negotiate the UCal Contract. UCal has detailed information on the Debtor. The Disclosure Statement provides additional information that UCal may not have. The Debtor's solicitation of UCal's acceptance has been limited to mailing the Plan, Disclosure Statement and ballot to it. The Debtor is fully prepared for UCal to reject the Plan.

65. The Senior Secured Lenders and UCal are sophisticated business enterprises. UCal has an internal group that specifically addresses UCal's energy needs. The "adequate information" for this sophisticated creditor differs from trade creditors that provide everything from materials to maintenance services. The experience of trade creditors with chapter 11 cases varies greatly. As such, the same information necessary for trade creditors differs from sophisticated creditors such as the Senior Secured Lenders and UCal.

> The flexibility in the standard comes primarily in the use of the phrase "investor typical of holders of claims or interests of the relevant class." That phrase is further defined to develop the idea that the disclosure required depends on the circumstances of the case, the relative sophistication of the creditors, and their access to other sources of information about the plan. For example, trade creditors will not need the same level of disclosure as public debenture holders or stockholders, and the section reflects the desired flexibility.

*In re Monroe Well Service, Inc*., 80 B.R. 324, 330 (Bankr. E.D. Pa 1987).

66. Section 1125(a)(1) and (2) make it clear that adequate information depends on the creditors in the class from whom acceptances are solicited and the nature of a debtor's business and records. Here, the Disclosure Statement meets that requirement.

67. In a prepackaged case, the determination of whether the disclosure of adequate information was provided with, or before, the solicitation of acceptances of the Plan must, by its nature, be determined after the commencement of the case. Additionally, approval of the disclosures is sought retroactive to the date of the prepetition solicitation. SDNY Prepackage Guidelines, p. 3 at Section III.A.(1)(i). Consistent with post-petition disclosure statements, 28 days' notice by mail of the time to object to adequacy of the information is adequate. See, Rule 2002(b)(1); SDNY Prepackage Guidelines, p. 20 at Section X.A.(ii).

68. The notice provided with the prepetition solicitation materials provided for objections to the Disclosure Statement to be filed on or before September 12, 2025. This is 28 days after mailing the notice. Notice of the objection deadline is reasonable. Further, the rational time to consider the objections to the Disclosure Statement is at the hearing on the confirmation that is requested to be at the Confirmation Hearing that is requested for September 30, 2025.

**(F) Approval of the Disclosure Statement is requested to be set for the same time as the Confirmation Hearing on September 30, 2025**

69. The Debtor served the Plan and the Disclosure Statement on the Senior Secured

Lenders and on UCal on or before August 14, 2025. With the Plan and Disclosure Statement, the Debtor also served the ballots, and a notice of dates by which ballots must be returned and objections to the adequacy of the Disclosure Statement and confirmation of the Plan. The Senior Secured Lenders returned their ballots through counsel on or before August 14, 2025. They are included in the Preliminary Report on Balloting filed on the Petition Date. A "Certificate of Prepetition Compliance Requirements" was filed on the Petition Date.

70. While the Debtor used a "Disclosure Statement" to solicit acceptances to the Plan before the Petition Date, approval of it was not necessary before the solicitation. *See*, § 1125(b) ("An acceptance or rejection of a plan may not be solicited ***after*** the commencement of the case … unless …there is transmitted … a written disclosure statement approved, after notice and a hearing, by the court …." (Emphasis added.)).

71. Rather, a combined hearing on the adequacy of the Disclosure Statement and confirmation of the Plan is the norm. *See*, SDNY Prepackage Guidelines, p. 20 at Section X.A.(iii). The Bankruptcy Code specifically authorizes a combined hearing. § 105(d)(2)(B)(vi). Accordingly, the Debtor requests that the Court use the Confirmation Hearing as a combined hearing on confirmation of the Plan and the adequacy of the Disclosure Statement.

**(G) Approval of case notice and noticing procedures**

72. This prepackaged case does not fit neatly into the usual notice sent by the Clerk's Office to provide notice of the commencement of a case. Additionally, due to the condensed timeframe of a prepackaged case, limited parties affected by the case and the Plan, notice of the case, noticing procedures and notice of the hearing to consider confirmation of the Plan need special treatment.

73. For this reason, notices of the case commencement and an order authorizing the mode of service of initial notices is frequently included in a prepackaged scheduling motion such as this motion. SDNY Prepack Guidelines, p. 11, Section VI.C.3.

74. The Debtor requests that the notice of commencement of the action attached as Exhibit A be approved. It is like the notice approved in the *Anchor Bancorp* case, dkt. 43.

75. Further, the Debtor requests that the Court limit all notices in the case after Exhibit A is sent to UCal, the Senior Secured Lenders, the U.S. trustee and parties that have filed a notice of appearance and will receive notices through the Court's ECF filing system.

**(H) Setting a Hearing on the Rejection of the UCal Contract and Estimation of UCal's Claim for Voting Purposes**

76. On the Petition Date, the Debtor filed a motion to reject the UCal Contract. If UCal objects to the motion, the Debtor requests that the Court consider the objection at the Confirmation Hearing.

77. Additionally, the Debtor has requested that the Court estimate UCal's claim from the rejection of the UCal Contract for voting purposes only. If UCal objects to the motion, the Debtor requests that the Court consider the objection at the Confirmation Hearing.

///

///

///

///

///

///

///

**Conclusion**

The Debtor filed a prepackaged chapter 11 case. The Debtor seeks to exit chapter 11 as quickly as possible, consistent with protecting the rights of all interested parties. This motion seeks to implement fast-tracking the case. The Debtor requests that the Court enter the proposed draft order filed as an attachment to the motion and grant further relief as is just.

Dated: August 16, 2025.

*/s/ Jerome R. Kerkman*
Jerome R. Kerkman
Kerkman & Dunn

Proposed Attorneys for the Debtor

Contact Information:

839 N. Jefferson St., Suite 400
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: jkerkman@kerkmandunn.com