UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**In re:**

**NLC Energy Denmark LLC,** **Case No. 25 -**
**Chapter 11 Proceedings**

**Debtor.**

**MOTION OF THE DEBTOR TO APPROVE STIPULATED ORDER WITH SENIOR SECURED LENDERS (i) TO MODIFY THE AUTOMATIC STAY TO FUND ESCROW RESERVES AND MAKE ADEQUATE PROTECTION PAYMENTS TO SENIOR SECURED LENDERS, (ii) TO PERMIT THE DEBTOR'S USE OF CASH COLLATERAL, AND (iii) TO PROVIDE ADEQUATE PROTECTION TO SENIOR SECURED LENDERS**

NLC Energy Denmark LLC (the "Debtor"), moves, pursuant to § 362(a) and § 363(c), to approve a stipulated order with the Senior Secured Lenders[1] and Wells Fargo (i) to modify the automatic stay to fund escrow reserves and make adequate protection payments to the Senior Secured Lenders, (ii) to permit the Debtor's use of cash collateral, and (iii) to provide adequate protection to the Senior Secured Lenders. The Debtor does not seek interim relief, only final relief. In support of this motion, the Debtor states:

**Cash Collateral Rule 4001(b)(1)(B) Concise Statement of Relief Requested**

*(i)* *Entities that may have an interest in cash collateral:* Wells Fargo, as the collateral trustee for the Senior Secured Lenders.

*(ii)* *Purposes for the use of cash collateral:* Continued operation of the Debtor's business without interruption, funding escrow reserves under the Prepetition Documents with the Senior Secured Lenders and Wells Fargo and making adequate protection payments. Fully described in paragraph 18.

*(iii)* *Material terms, including duration, of the use of the cash collateral:* The Debtor seeks authority to use cash collateral to allow continuous operation of its business during the pendency of this Case. The material terms are stated in paragraph 23 of this motion. They include replacement liens, maintaining insurance, reporting requirements and

[1] Unless otherwise defined, all defined terms have the meaning ascribed to them in the Prepackaged Plan of Reorganization of NLC Energy Denmark LLC (the "Plan") that was filed on the Petition Date.

adequate protection payments.

(iv) *Any liens, cash payments, or other adequate protection that will be provided to each entity with an interest in the cash collateral:* Replacement liens in the same priority and to the same extent as existed prepetition and extension of liens as allowed under the Code and adequate protection payments more fully described in paragraph 21(a) and (d).

**Jurisdiction**

1. The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 16, 2025 (the "Petition Date"). An order for relief was entered on the same day.

2. The Debtor continues to manage its business and affairs as a debtor-in-possession §§ 1107 and 1108 of the Bankruptcy Code.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and § 157(a), and the order of reference in this district entered pursuant to § 157(a).

4. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M). It concerns the administration of the Debtor's estate and the Debtor's use of cash collateral.

**Background on the Debtor's Business**

5. The primary business of the Debtor is converting farm manure and food waste into biomethane that it sells. The Debtor employs approximately 34 people. The Debtor's principal operations and assets are at 6601 County Rd R, Denmark, Wisconsin.[2]

6. EEC Property Holdings LLC is the parent company of the Debtor and owns all the Debtor's equity securities. NLC Energy LLC owns all the equity securities of EEC Property Holdings.

[2] A statement of the business and financial problems leading to the chapter 11 filing are stated in the Disclosure Statement and/or the Declaration of Welles Hatch is Support of First Day Motions filed on the Petition Date.

**Description of Financing from Senior Secured Lenders**

7. On September 28, 2017, the Debtor obtained financing. The Debtor issued 6.25% Series A1 Senior Notes and 7.75% Series A2 Senior Notes. As of July 31, 2025, the total amount outstanding on the notes was $75.8 million (collectively, along with related Prepetition Documents, the "Senior Secured Notes"). Ten investors presently hold the notes (collectively, the "Senior Secured Lenders"). The Senior Secured Lenders are identified on Addendum 4.1(a) to the Plan.

8. In conjunction with the issuance of the Senior Secured Notes, Wells Fargo became the collateral trustee under a Collateral Trust Indenture dated September 28, 2017 (the "Indenture").

9. As collateral trustee, Wells Fargo provided administrative services to the Senior Secured Lenders for the Senior Secured Notes. The Debtor assigned its largest customer receipts, including from UCal, to Wells Fargo as collateral for the Senior Secured Notes. Wells Fargo also monitors the Debtor's compliance with various financing covenants under the Senior Secured Notes. From the payments received from the Debtor's customers, contractual counterparties and, if necessary, equity holders of the Debtor, Wells Fargo makes interest and principal installments to the Senior Secured Lenders due under the Senior Secured Notes.

10. As the Debtor encountered financial issues, the parties amended the Senior Secured Notes and related documents. This resulted in a Second Amended and Restated Escrow and Servicing Agreement dated on or about August 14, 2025 (the "Amended Escrow Agreement"). (Sections 2 and 3 of the Amended Escrow and Servicing Agreement are included in **Exhibit 4**.)[3]

[3] All exhibits are attached to the Declaration of Welles Hatch filed on the Petition Date.

Section 3 provided for reserves to ensure timely payment of certain obligations. The reserves included a reserve for note payments to Senior Secured Lenders, property taxes, insurance, maintenance, etc. To the extent the reserves are funded on the Petition Date, they are collectively referred to as the "Escrow Reserves" in this motion.

**Description of Liens Against Cash Collateral**

11. The Debtor's attorneys, Kerkman & Dunn ("K&D"), searched the UCC financings statements filed in Wisconsin under the Debtor's name, and legal filings in Wisconsin Circuit Courts. (**Exhibit 6.**) Based upon the searches, one entity has a possible perfected interest in cash collateral of the Debtor: Wells Fargo, as collateral trustee on behalf of the Senior Secured Lenders.

12. The UCC financing statements perfected liens on cash collateral granted in a Mortgage, Security Agreement, Assignment of Leases, Rents and Assigned Contracts and Fixture Filing Statement dated September 28, 2017 as subsequently amended on February 15, 2019, on June 9, 2021 and on March 24, 2023 (collectively and as amended, the "Security Agreement") (The September 28, 2017 Mortgage is marked as **Exhibit 5.)**

**Description of Cash Collateral**

13. As of July 31, 2025, (i) Debtor's deposit account at Settlers Bank, which is being closed with funds transferred to '576 held in the name of Debtor with Citizens Bank, N.A. ("Debtor's Operating Account") had a cash balance of $204,520 and (ii) Debtor's Escrow Reserves maintained with Wells Fargo in accordance with the Amended Escrow Agreement had a total cash balance of $520,825. In addition, the Debtor has an escrow account at Citizens Bank to secure the UCal contract of $550,000. The Debtor expects these accounts to be at the same levels on August 16, 2025, the petition date.

14. For purposes of this Motion, the term "Cash Collateral" shall be deemed to include,

without limitation, all of the above amounts set forth in the preceding paragraph plus all of the Debtor's "Cash Collateral" as defined under section 363 of the Bankruptcy Code in which the Senior Secured Lenders asserts valid, perfected security interests, liens, mortgages, and shall include and consist of, without limitation, all rents, fees, charges, accounts and other payments made to the Debtor.

**Cash Flow and Funding Immediately After the Petition Date**

15. After the Petition Date, the Debtor seeks to avoid disturbing the flow of funds that existed under the Amended Escrow Agreement and other Prepetition Documents before the Petition Date. To accomplish this, the Debtor requests three forms of relief in this motion: (i) modification of the automatic stay so that Wells Fargo can continue disbursing Escrow Reserves as it did before the Petition Date, including making payments to the Senior Secured Lenders under the Prepetition Documents as adequate protection payments; (ii) approval of the Debtor's use of Cash Collateral on the terms of this motion; and (iii) granting adequate protection to the Senior Secured Lenders for the Debtor's use of Cash Collateral. The Debtor does not seek interim relief, only final relief, thus avoiding an expedited motion.

16. Until an order is entered approving this motion, (i) Wells Fargo shall receive and hold Cash Collateral in the Escrow Reserves in the same manner it did before the Petition Date and shall not permit any disbursements thereof. The Debtor shall cause Citizens Bank, N.A. to hold Cash Collateral in the Debtor's Operating Account and shall only disburse Cash Collateral to pay Debtor's operating and maintenance costs related to the Denmark Facility in accordance with the budget marked as **Exhibit 3.**

17. Until an order is entered approving this motion, to the extent the funds in the Debtor's Operating Account are insufficient to pay such operating and maintenance costs related

to the Denmark Facility, the equity holders of the Debtor will deposit any shortfalls in the Debtor's Operating Account.

18. After the order is entered approving this motion, Wells Fargo will disburse Cash Collateral in the Escrow Reserves and make payments to the Senior Secured Lenders as required under the Prepetition Documents, including the Amended Escrow Agreement, as supplemented by the Side Letter, as adequate protection payments from the funds being held by Wells Fargo. The Debtor may use Cash Collateral in the Debtor's Operating Account but only to pay (i) operating and maintenance costs of the Debtor related to the Denmark Facility, including taxes, utilities, and insurance, (ii) costs and expenses, including any reasonable counsel fees, costs of, and compensation to Wells Fargo or other agents of the Senior Secured Lenders incurred after or before the Petition Date, and (iii) adequate protection payments to the Senior Secured Lenders. The Debtor may use Cash Collateral in the Debtor's Operating Account to pay fees, costs or expenses due to the chapter 11 filing, including professional fees or U.S. trustee fees.

19. Additionally, after the order approving this motion is entered, equity holders of the Debtor will continue to provide cash contributions as necessary for the Debtor to meet its obligations, including those to the Senior Secured Lenders.

20. At all times before and after the order is entered approving this motion, Debtor shall continue to cause its customers and contractual counterparties to deposit payments and all revenue generated from the Denmark Facility into the Escrow Reserves with Wells Fargo and shall not at any time redirect any such payments or direct any payments or revenue generated by the Denmark Facility to the Debtor's Operating Account.

**Modification of the Automatic Stay**

21. As described above, the Amended Escrow Agreement requires certain Escrow

Reserves. The Debtor seeks to have the automatic stay modified so that Wells Fargo can continue to fund such Escrow Reserves and make payments to the Senior Secured Lenders as adequate protection. Funding such Escrow Reserves benefits the Debtor and its estate. The Escrow Reserves relate, in part, to costs necessary to maintain the Debtor's property and value.

**Agreement to Use Cash Collateral**

22. The Senior Secured Lenders have agreed the Debtor may use Cash Collateral on the terms of the stipulated order filed with this motion. Equity holders of the Debtor will fund the Debtor's operations as necessary with equity contributions for the limited time necessary before the orders approving this motion are entered. This structure avoids the need for a first-day emergency hearing to permit the use of cash collateral and the issue of what cash collateral generated after the Petition Date is considered collateral of the Senior Secured Lenders under § 552(b).)

**Proposed Adequate Protection**

23. The following is the adequate protection agreed upon by the Senior Secured Lenders and the Debtor for the Debtor to use of Cash Collateral:

(a) *Replacement Liens.* The Debtor will grant the Senior Secured Lenders and Wells Fargo replacement liens of the same priority to the same extent in the Cash Collateral as existed immediately before the Petition Date (the "Replacement Liens"). The Replacement Liens are deemed automatically perfected upon entry of the Order approving this motion without the necessity of the Senior Secured Lenders or Wells Fargo taking possession, filing financing statements, mortgages or other documents; provided, however, that the Debtor will execute any necessary perfection documents upon the request of the Senior Secured Lenders or Wells Fargo. The Senior Secured Lenders may not improve their secured position after the Petition Date due to

the Replacement Liens.

(b) *Extension of Prepetition Liens*. The perfected liens of the Senior Secured Lenders and Wells Fargo will extend to the collateral under the Replacement Liens, and the products and proceeds thereof pursuant to § 552(b) of the Bankruptcy Code.

(c) *Reporting.* The Debtor will provide reports of its receipts and distributions consistent with the monthly reporting requirements for chapter 11 cases.

(d) *Adequate Protection Payments*. The Debtor will continue making the payments as required under the Prepetition Documents to the Senior Secured Lenders, as supplemented by the Side Agreement, commencing after entry of the order approving this motion and continuing as provided in the prepetition loan documents. They will be made from funds received by Wells Fargo from the Debtor's customers and contractual counterparties and, if necessary, as funded by equity holders of the Debtor.

(e) *Reporting.* The Debtor will provide reports of its receipts and distributions consistent with the monthly reporting requirements for chapter 11 cases as determined by the Court.

(f) *Insurance.* The Debtor will continue to maintain general property and liability coverage consistent with its coverage before the Petition Date and requirements under the Prepetition Documents with Wells Fargo that existed as of the Petition Date with respect to its collateral.

(g) *Other.* The Debtor will comply with all non-monetary terms of the Prepetition Documents except solvency-related covenants, and to the extent a term conflicts with any Court Order or other provisions contrary to the Code.

(h) The Order approving this motion is effective as of the Petition Date and

shall terminate upon a trustee being appointed, the Debtor's chapter 11 case being dismissed, the entry of an order confirming a plan of reorganization, or further order of the Court.

(i) The Senior Secured Creditors may seek expedited relief for adequate protection if the Debtor's financial situation deteriorates or is in danger of materially deteriorating.

**Legal Authority for Relief Requested**

24. Under the Bankruptcy Code, a debtor cannot use cash collateral unless it has consent from the entity that has an interest in cash collateral, or "the court, after notice and a hearing authorizes such use." § 363(c)(2)(B). Cash collateral includes a debtor's "cash, negotiable instruments, documents of title, securities, deposit accounts, [including] the proceeds, products, offspring, rents, or other profits of property…." § 363(a).

25. Generally, a debtor can use cash collateral if the creditor agrees it is adequately protected or the Court determines that it is. The Code does not define "adequate protection," but § 361 provides examples such as (a) cash payments to the extent the collateral is decreasing in value, (b) giving the secured lender replacement liens on the collateral, and (c) granting other relief as will result in giving the secured lender the indubitable equivalent of the lender's interest in the collateral.

26. The purpose of adequate protection is to guard against diminution in the value of a secured creditor's collateral and to preserve the secured creditor's position as of the date the bankruptcy was filed. *See In re Guerrero*, 536 B.R. 817, 825 (Bankr. E.D. Wis. 2015); *Resolution Trust Corp. v. Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994).

27. In this case, the Debtor and the Senior Secured Lenders have stipulated to the terms of adequate protection for the use of their Cash Collateral. The Bankruptcy Rules contemplate and provide for such a stipulation. Rule 4001(d).

28. The proposed adequate protection is described above and stated in the proposed order accompanying this motion. It includes granting Replacement Liens, making payments and complying with the non-monetary terms of the loan documents with the Senior Secured Lenders excluding solvency-related covenants or other provisions contrary to the Code or any order of the Court.

29. The proposed adequate protection will protect the Senior Secured Lenders from diminution of the value of their collateral positions. The Debtor submits that the adequate protection proposed in this motion is fair and reasonable.

30. The Debtor's use of the Cash Collateral will not prejudice any party in interest. Wells Fargo, on behalf of the Senior Secured Lenders, has a Lien on the Debtor's assets that is superior to other creditors. If the Debtor's business were to shut down, creditors other than the Senior Secured Lenders would receive nothing. Accordingly, the interests of creditors in the Debtor's case will be best served by permitting the Debtor to use the Cash Collateral.

**Notice of the Motion**

31. Service on the motion must be on the list of 20 largest unsecured creditors and on any other party as the Court directs. Rule 4001(c)(1)(C). The Debtor has given notice to the 20 largest creditors, Wells Fargo, the Senior Secured Lenders, UCal, the United States trustee and any interested party that has filed a request for notices in the case. Notice of the request was by regular mail with 14 days' notice as required by Rule 4001(d)(2) unless a party receives notice by the ECF filing system.

## Conclusion

Wherefore, the Debtor requests the approval of (a) the stipulated order with the Senior Secured Lenders and Wells Fargo (i) to modify the automatic stay to fund escrow reserves and make adequate protection payments to the Senior Secured Lenders, (ii) to permit the Debtor's use of Cash Collateral, and (iii) to provide adequate protection to the Senior Secured Lenders, and (b) granting other relief as is just.

Dated: August 16, 2025.

*/s/ Jerome R. Kerkman*
Jerome R. Kerkman

Kerkman & Dunn
Proposed Attorneys for the Debtor

Contact Information:

839 N. Jefferson St., Suite 400
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: jkerkman@kerkmandunn.com