**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

---

**In re:**

**NLC Energy Denmark LLC,**

**Debtor.**

**Case No. 25-24634-kmp**
**Chapter 11 Proceedings**

---

# MEMORANDUM OF LAW IN SUPPORT OF DEBTOR'S PREPACKAGED PLAN OF REORGANIZATION DATED AUGUST 14, 2025, AS MODIFIED

---

NLC Energy Denmark LLC (the "Debtor") requests confirmation of its Prepackaged Plan of Reorganization dated August 14, 2025, filed as ECF No. 9, as modified.

The first group of modifications occurred on October 17, 2025, and were incorporated into the version of the plan filed as ECF No. 77; they addressed the settlement reached with UCal.[1] The second group of modifications is contained in the proposed order confirming the plan submitted with this memorandum; these modifications eliminated non-debtor releases and exculpations in Sections 9.4 and 9.5 to resolve objections to the plan by the U.S. Trustee. The third group of modifications is also contained in the proposed order confirming the plan submitted with this memorandum; these modifications amended the Side Agreement to have Blough, a non-debtor who guaranteed the debt of the Senior Secured Lenders, indemnify the Senior Secured Lenders and Wells Fargo, the escrow trustee, from their potential liabilities that had originally been addressed in the non-debtor releases and exculpations originally contained in Sections 9.4 and 9.5. (Collectively, the plan filed on August 14, 2025, with the three groups of modifications, is referred to as the "Plan.")

In support of confirmation without a hearing, the Debtor submits with this memorandum

---

[1] All defined terms in the memorandum have the meaning assigned to them in the Plan.

the Declaration of Welles Hatch in Support of Confirmation of the Debtor's Prepackaged Plan of Reorganization Dated August 14, 2025, as Modified ("Hatch Declaration"), the Declaration of Jerome Kerkman in Support of Confirmation that is being filed with this memorandum ("Kerkman Declaration"), and the other pleadings previously filed with the Court that are referred to in this memorandum.

**Jurisdiction**

1. The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (title 11, United States Code) (the "Code") on August 16, 2025 (the "Petition Date") as a prepackaged chapter 11 case.

2. The Debtor continues to manage its business and affairs under §§ 1107(a) and 1108 of the Code.

3. The Court has jurisdiction over this matter under 28 U.S.C. §§ 1344(a) and 157(a), and the order of reference filed in this district entered under § 157(a).

4. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) as a matter concerning confirmation of a plan.

**Factual Background Leading Up to Confirmation**

5. The Code enables the Debtor to submit a plan of reorganization. § 1121(a). The Debtor initially filed the Plan on August 16, 2025. (ECF No. 9.) The Debtor subsequently modified the Plan on October 17, 2025. (ECF Nos. 76, 77; Proposed Order Confirming Plan filed with this memorandum.)

6. The Court entered the Second Amended Prepack Scheduling Order on October 21, 2025 (ECF No. 82) and Third Amended Prepack Scheduling Order on November 13, 2025 (ECF No. 92) (collectively, the "Scheduling Order") setting dates relating to confirmation of the Plan.

The Scheduling Order and previous orders (ECF Nos. 34 and 69) set dates by which interested parties could return ballots to accept or reject the Plan. The last date for a ballot to be returned was October 24, 2025. (ECF No. 82, ¶ 2.) The last date for parties that had accepted the Plan to change their acceptance due to the Debtor modifying the Plan was November 7, 2025. (ECF Nos. 76-2, 81.) No one changed their vote from accepting the Plan to rejecting the Plan. (Kerkman Declaration (filed with this memorandum), ¶ 4.)

7. On August 14, 2025, before the Petition Date, the Debtor served the (1) Plan, (2) a Notice of Solicitation, (3) Disclosure Statement and (4) ballots on creditors and interested parties. (ECF No. 11-3.)

8. The initial scheduling order provided a deadline of September 12, 2025, to file objections to confirmation of the Plan. (ECF No. 34, ¶ 3.) Later, the deadline was extended for certain parties to object to confirmation with November 7, 2025, as the final date for all objections, except UCal, the Senior Secured Lenders (as defined in the Plan), and the U.S. Trustee (collectively, the "Active Participants") had until December 1, 2025, to object to confirmation of the Plan. (ECF No. 82, ¶ 3.)

9. The Active Participants have waived their ability to object to confirmation of the Plan. (Kerkman Declaration, ¶ 5; Exhibit 3.)

10. The Scheduling Order provided that by December 5, 2025, the Debtor could submit documents necessary to confirm the Plan without a hearing. (ECF No. 92, ¶ 1.)

11. The Debtor filed a Report on Balloting on August 16, 2025, (ECF No. 12) and a Supplemental Report on Balloting on October 21, 2025 (ECF No. 84).

12. The following impaired classes of claims, which are the only impaired classes under the Plan, have unanimously accepted the Plan:

- Class 1 (Secured Claims of Senior Secured Lenders); and
- Class 3 (Unsecured Claims).

(Supplemental Report on Balloting, ECF No. 84.)

13. The Court held a telephonic status conference on confirmation of the Plan on November 13, 2025, and scheduled another telephonic status conference for December 16, 2025, at noon. The Debtor does not believe any additional modifications to the Plan are required and based upon the evidence submitted, the Court can confirm the Plan without a hearing.

**Legal Analysis**

The Debtor seeks confirmation of the Plan. As shown below, the Plan meets the requirements of confirmation under § 1129. No objections were filed to confirmation of the Plan. Those parties that can object to the Plan, i.e. the Active Participants, have waived their ability to object to the Plan (Kerkman Declaration, ¶s 5, 6; Exhibit 3) or as to the U.S. Trustee do not object to the form of the proposed order confirming the Plan (Id., ¶ 7).

**I. The Court can enter an order confirming the Plan without a hearing.**

The Debtor has requested that the Court enter an order confirming the Plan without a hearing because all requirements of § 1129 have been met. (Debtor's Conditional Motion to Enter Confirmation Order Without a Hearing, ECF No. 80.)

The Court may confirm the Plan without a hearing. Section 1128(a) suggests that a hearing is required. However, § 1128(a) is qualified by § 102(1)(A) that provides that an opportunity for a hearing is all that is needed. *See, In re Ives*, 289 B.R. 726, 728 (Bankr. Ariz. 2003) (court interpreting identical requirements in § 1324(a) found opportunity was all that was required, not an actual hearing); *in accord, In re Smith*, 2007 WL 1544366, *10 (Bankr. E.D. Wis. 2007) (B.J. Pepper) (Court noted that "[u]nlike other districts, the Eastern District of Wisconsin does not hold confirmation hearings [in chapter 13 cases] ….); *In re EDC 2370, LLC*, Case No. 23-24219-kmp,

Dkt. 121, ¶ 7 (1/10/24 Order on Notice of Plan Confirmation Hearing and Related Procedures and Deadlines) (summary confirmation without a hearing permitted if criteria are met) (B.J. Perhach).

**II. The Plan meets all applicable requirements for confirmation under § 1129.**

Section 1129(a) sets forth requirements for confirmation of a plan that have been accepted by all impaired classes of creditors. *Matter of 203 North LaSalle Street Partnership*, 126 F.3d 955, 960 (7th Cir. 1997), *rev'd on other grounds*, 526 U.S. 434 (1999); *In re Polytherm Industries, Inc.*, 33 B.R. 823, 828 (W.D. Wis. 1983) (Judge Crabb). The Plan meets all the requirements for confirmation as shown below.

**(1) The Plan complies with the Code.**

Section 1129(a)(1) requires that "The plan complies with the applicable provisions of this title." Procedurally, a plan must contain certain requirements. § 1123(a).

**(a) Designate classes.** A plan must designate classes of claims and interests. § 1123(a)(1). The Plan designates classes of claims and interests. (ECF No. 77, Article III.)

**(b) Classes not impaired specified.** A plan must specify any class of claims or interests that is not impaired. § 1123(a)(2). The Plan specifies that only Class 2 is not impaired. (ECF No. 77, § 4.2.)

**(c) Treatment of impaired classes specified.** A plan must specify the treatment of any class of claims or interests that is impaired. § 1123(a)(3). The Plan specifies the treatment of the three impaired classes, Classes 1, 3 and 4. (ECF No. 77, §§ 4.1, 4.3 and 4.4.)

**(d) Provide for the same treatment of each claim or interest in a class.** A plan must provide for the same treatment of each claim or interest in a class. § 1123(a)(4). The Plan treats each claim or interest in a class the same. (ECF No. 77, §§ 4.1, 4.3 and 4.4.)

**(e) Provide adequate means for the plan's implementation.** A plan must provide adequate means for the implementation of the Plan. § 1123(a)(5). The Plan so provides. It provides for the marketing and sale of the Debtor's business. (ECF No. 77, § 4.1(c) and (d).) The Plan provides for the Equity Securities holder to infuse cash to fund the Plan on the Effective Date and as needed afterwards. (Id., § 6.1.) The Plan provides for continued operation and the management of the Reorganized Debtor. (Id., § 6.2 and § 6.6.) The Plan resolves possible litigation with UCal. ((Id., § 4.3.)

(f) **Amendment of the Debtor's charter.** If a debtor is a corporation, its charter must be amended to prohibit the issuance of nonvoting equity securities. § 1123(a)(6). The Debtor is not a corporation, so this provision does not apply.

**(g) Contain provisions consistent with the interests of creditors and interest holders.** A plan can only contain provisions consistent with the interests of creditors and equity security holders. § 1123(a)(7). The provisions of the Plan were negotiated with and scrutinized by the Debtor's creditors and Equity Securities holder. (Kerkman Declaration, ¶ 8.) All provisions of the Plan are consistent with their interests.

**(h) Other.** The Debtor is not an individual so sections 1123(a)(8) and (c) do not apply. Finally, the Debtor is assuming all executory contracts and unexpired leases, except the UCal Contract was rejected. The Debtor is current with its obligations on the assumed unexpired leases and executory contracts. (Hatch Declaration, ¶ 3.) Any creditor that disagrees and asserts an amount must be paid to cure arrearages can seek a determination of the appropriate amount as required by § 1123(d). All other requirements of the Code for the Plan have been met.

As demonstrated in this memorandum, the Plan complies with the Code. No interested party has objected that the Plan fails to comply with the Code. Accordingly, the Plan complies with 1129(a)(1).

**(2) The Debtor has complied with the Code.**

Section 1129(a)(2) requires that "The proponent of the plan comply with the applicable provisions of this title." The Debtor has complied with the statutory provisions of the Code throughout its reorganization, including the period during the formulation of the Plan. No interested party in the case has objected that the Debtor failed to comply with this requirement. Further, orders entered during the case demonstrate the Debtor's compliance with the Code. *See*, Order Approving Debtor's Rejection of the Executory Contract with the Regents of the University of California (UCal) for the Sale and Purchase of Biomethane Natural Gas (ECF No. 71) and Order Approving Debtor's Prepetition Solicitation Procedures, Including Adequacy of Disclosure Statement (ECF No. 83). Accordingly, the Plan complies with § 1129(a)(2).

**(3) The Plan has been proposed in good faith and by legal means.**

Section 1129(a)(3) requires that "The plan has been proposed in good faith and not by any means forbidden by law." Good faith "is generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re 203 N. LaSalle St. P'ship*, 126 F.3d at 969 (internal quotations omitted). In determining whether a plan has been proposed in good faith, a plan should be viewed based on the totality of the circumstances surrounding the development and proposal of that plan. *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984). The plan's true purpose is "preserving going concerns and maximizing property available to satisfy creditors." *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 435 (1999).

If no objection is timely filed, "the court may, without receiving evidence, determine that the plan was proposed in good faith and not by any means forbidden by law." Fed. R. Bankr. P. 3022(b)(3).

In the Debtor's case, no objection has been filed. Further, the Plan will achieve a result consistent with the objectives and purposes of the Code – the successful reorganization of the Debtor after negotiations with its Senior Secured Lenders (achieved before the Petition Date) and UCal (achieved after the Petition Date). Accordingly, the Plan complies with § 1129(a)(3).

**(4) Payments for professional services have been and will be Court approved.**

Section 1129(a)(4) requires that any payments made by the debtor for services or costs and expenses in connection with the case have been approved by the court as reasonable. The Plan provides for the payment of Administrative Expenses. (ECF No. 77, § 2.1, § 6.12, § 12.6.)

The Debtor's bankruptcy counsel, Kerkman & Dunn, was retained during the bankruptcy proceedings. The Court approved Kerkman & Dunn's employment as bankruptcy counsel for the Debtor. (ECF No. 59.)

Kerkman & Dunn will file a final fee. The Plan provides that the Debtor will not pay any professionals representing them as debtor-in-possession outside of Court approval. (ECF No. 77, § 2.1, § 6.12, § 12.6.)

Accordingly, the Plan complies with § 1129(a)(4).

**(5) The Debtor has complied with § 1129(a)(5), as applicable.**

Section 1129(a)(5) requires that the debtor disclose any individuals proposed to serve as director or officer after confirmation of the plan, and that the appointment or continuance in such office is consistent with the interests of creditors and equity security holders and public policy. It further requires the debtor to disclose the identity of any insider that will be employed or retained

by the reorganized debtor and the nature of any compensation.

The Plan provides that Douglas Blough, as managing member, will govern and control the Reorganized Debtor. (ECF No. 77, § 6.9(a). The compensation for officers is being disclosed in the Hatch Declaration at ¶ 4. The Plan complies with Section 1129(a)(5).

**(6) Section 1129(a)(6) does not apply.**

Section 1129(a)(6) requires that "Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval."

This section does not apply because no regulatory commission has jurisdiction over the Debtor's business. (Hatch Declaration, ¶ 5.)

**(7) The Plan provides that each claimholder in an impaired class has accepted the Plan or will receive more than under chapter 7.**

Section 1129(a)(7) requires that for each impaired class, each claimholder has ***either accepted the plan*** or "will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." This is known as the "best interests test." *203 North LaSalle*, 126 F.3d at 959. "If a class of claims or interests unanimously accepts the plan, then the best interests test is automatically satisfied for all members of that class." *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992).

In the Plan, there are three impaired classes: Class 1 (Senior Secured Lenders' Secured Claims), Class 3 (Unsecured Claims) and Class 4 (Equity Securities). (ECF No. 77, §§ 4.1(i), 4.2, 4.3(e) and 4.4(d).) Every claimholder in Classes 1 and 3 has returned a ballot accepting the Plan and the sole Equity Security holder has returned a ballot accepting the Plan. (Report on Balloting,

ECF No. 12; Supplementary Report on Balloting, ECF No. 84; Kerkman Declaration, ¶ 8.) Accordingly, the Plan complies with § 1129(a)(7).

**(8) The Debtor has complied with § 1129(a)(8).**

Section 1129(a)(8) requires that each class of claims or interests has either accepted the plan or is not impaired under the plan. Classes 1, 3 and 4 have accepted the Plan. The remaining class, Class 2 (Trade Claims), is unimpaired. (ECF No. 77, § 4.2.) Accordingly, the Plan meets the requirements of § 1129(a)(8).

**(9) The Plan's treatment of administrative expenses, taxes and priority claims complies with the Code.**

Section 1129(a)(9) requires that certain priority claimants, including claims for administrative expenses and priority taxes, are paid as required by the Code.

Sections 2.1 and 2.2 of the Plan outline the treatment of Administrative Expenses and Allowed Priority Tax Claims. (ECF No. 77.) The Plan provides for full payment of Administrative Expenses and priority tax claims on or before the Effective Date as required by 1129(a)(9)(A). Accordingly, the Plan meets the requirements of § 1129(a)(9).

**(10) At least one impaired class has accepted the Plan.**

As discussed earlier, the Plan has two impaired classes. Both impaired classes have unanimously accepted the plan. Class 1 has no insiders. Accordingly, the Plan meets the requirements of § 1129(a)(10) that at least one class of claims impaired by the Plan has accepted the Plan without including the acceptance of the Plan by an insider.

**(11) Subsequent liquidation or further reorganization is not likely ("Feasibility Test").**

Section 1129(a)(11) requires that "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to

the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." This is known as the "feasibility" requirement. *In re Lupton Consulting LLC*, 633 B.R. 844, 866 (Bankr. E.D. Wis. 2021). Typically, the feasibility requirement "mandates that the plan proponent offer concrete evidence of sufficient cash flow to fund its obligations under the plan." *Id.* This requires a reasonable assurance of commercial viability. *Id.*

"In determining that the plan was feasible, the bankruptcy court need not find that it is guaranteed to succeed; '[o]nly a reasonable assurance of commercial viability is required.'" 203 *North LaSalle Street Partnership*, 126 F.3d at 961-2 (1999) (citations omitted). "A plan need not be assured of success to be confirmed. *Id*., p. 962.

Historically, the Debtor has operated at a loss due to a high debt load and a sub-market rate with UCal to sell its product. (Declaration of Hatch, ¶s 18, 30-31; Exhibit 1 (ECF No. 10, pp. 15 - 25.) During the case, the Debtor rejected its contract with UCal. (ECF No. 71.) This permits the Debtor to realize market prices for its product. Under the Plan, the Debtor reduced its debt service. (ECF No. 77, § 4.1(b)(i).) The combination of these permits the Debtor to operate profitable on a cash basis by 2027. (Hatch Declaration, ¶ 6; Exhibit 2, ECF No. 10, p. 32.)

The Debtor's quarterly financial statements ending September 30, 2025, show that the Debtor did not meet its projections. (ECF No. 87-1, p. 9.) This was due to the projections being prepared and assumptions made in July 2025 not being met. The assumptions assumed that the UCal Contract would be rejected sooner. However, the Petition Date was delayed so the effect of the rejection was delayed. The original projections assumed the interest expense would be reduced at a sooner date. But again, due to the delay in filing, it was not. (Hatch Declaration, ¶ 7.)

To the extent the Debtor's cash flow in insufficient to meet its expenses, its Equity Securities holder, EEC Property Holdings, or a related insider company will fund the cash deficits.

(ECF No. 77, § 4.4(b).) It will also be funding the cash necessary to fund obligations on the Effective Date. (Id.)

The Equity Securities holder has already shown its ability to fund the Debtor's operations. Through June 30, 2025, it has provided funds of $57,637,498 as debt and $7,506,734 as equity. (Hatch Declaration, ¶ 8; Exhibit 2, ECF No. 10, p. 21.) In the 12 months before September 30, 2025, it has provided more than $15 million in funds. (ECF No. 87-1, p. 15.) From July 1 through September 30, 2025, it has provided $4,107,355 in funds. (Id., p. 22.) The Senior Secured Lenders, who have the most at stake in the case and have a long history with the Debtor have not raised feasibility as a concern.

Accordingly, the Plan meets the feasibility requirements of § 1129(a)(11).

**(12) The U.S. Trustee fees are paid or provided for as required by § 1129(a)(12).**

The Debtor is or will become current with its fees under 28 U.S.C. § 1930. (Hatch Declaration, ¶ 9.) The Plan provides for the Debtor to continue paying them as due. (ECF No. 77, § 6.11.) The Debtor will pay them as they are due. (Id.) Accordingly, the Plan complies with § 1129(a)(12).

**(13) Section 1129(a)(13) relating to retiree benefits does not apply.**

Section 1129(a)(13) relates to the continuation after the effective date of retiree benefits. This section does not apply because the Debtor has no retirees. (Hatch Declaration, ¶ 10.)

**(14) Section 1129(a)(14) relating to domestic support obligations does not apply.**

Section 1129(a)(14) requires that a debtor pay domestic support obligations. This section does not apply because the Debtor is a limited liability company and cannot have domestic support obligations.

**(15) Section 1129(a)(15) does not apply because the Debtor is not an individual.**

Section 1129(a)(15) applies to individuals. The Debtor is not an individual so § 1129(a)(15) does not apply.

**(16) The Debtor has complied with § 1129(a)(16), as applicable.**

Section 1129(a)(16) requires that "All transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust." The Plan provides for the marketing and sale of the Debtor's business. (ECF No. 77, § 4.1(c) and (d).) The proposed confirmation order (at ¶ 2) provides for transfers to be in accordance with applicable bankruptcy law. The Plan and proposed confirmation order comply with § 1129(a)(16).

**(17) Settlement with UCal in the Plan.**

The Plan incorporates a settlement with UCal that was reached to obtain its acceptance of the Plan. (See ECF No. 76.) Section 1123(b)(3)(A) provides that a plan may settle rights of the Debtor. Often a settlement occurs before confirmation of a plan and is governed by Fed. R. Bankr. P. 9019(a). In general, a court approves a settlement under Rule 9019(a) if it is in the best interests of the debtor, its creditors and the bankruptcy estate, and is fair and equitable. A settlement is "fair and equitable" if it is reasonably consistent with competing interests' relative priorities. *E.g., In re American Reserve Corp*., 841 F.2d 159, 161-63 (7th Cir. 1987).

A court considers several factors when analyzing whether to approve a settlement under Rule 9019(a), including "a comparison of the settlement's terms with the litigation's probability of success, the litigation's complexity, and the litigation's attendant expense, inconvenience, and delay (including the possibility that disapproving the settlement will cause wasting of assets)." *Id.* at 161.

A court also considers the reasonable equivalence of what the estate is giving up.

> As part of this test, the value of the settlement must be reasonably equivalent to the value of the claims surrendered. This reasonable equivalence standard is met if the settlement falls within the reasonable range of possible litigation outcomes. … Because litigation outcomes cannot be predicted with mathematical precision, only if a settlement falls below the low end of possible litigation outcomes will it fail the reasonable equivalence standard. [Citations omitted.]

*In re Doctors Hosp. of Hyde Park, Inc*., 474 F.3d 421, 426 (7th Cir. 2007).

While Rule 9019(a) does not apply to settlements in a plan, it and the law interpreting it show that the settlement with UCal incorporated into the Plan are appropriate and consistent with § 1129(a)(3) that requires that a plan be proposed in good faith.

In this case, the Debtor faced potentially protracted litigation with UCal over the amount of its claim that could have led to a contested confirmation hearing. The Debtor viewed protracted litigation as harmful. There may be a delay in confirmation of the Plan and its Effective Date that would have delayed the Debtor realizing the financial benefits of a confirmed Plan. Additionally, the Debtor's business requires skilled employees. The longer the Debtor is in chapter 11, the more likely there will be problems retaining skilled employees. Finally, creditors would likely have become apprehensive, and the uncertainty of the proceedings will cause issues with suppliers and vendors. (Hatch Declaration, ¶ 11.)

Financially, the Debtor projected that it would save at least $50,000 from the settlement than from continued litigation, assuming no litigation risk and a complete success by the Debtor. (Hatch Declaration, ¶ 12.) If the uncertainty of litigation is factored in, the savings are even higher. (Id.)

Accordingly, the settlement with UCal that is incorporated in the Plan is fair and reasonable, and a reasonable equivalent of the value given up by the Debtor. It is appropriate for the proposed confirmation order to include the findings relating to the UCal settlement as stated in the proposed order.

## Conclusion

For the reasons as stated in this Memorandum, the Debtor requests the Court enter the proposed order confirming the Plan without a hearing.

Dated: November 26, 2025.

*/s/ Jerome R. Kerkman*
Jerome R. Kerkman
Kerkman & Dunn

Attorneys for Debtor, NLC Energy Denmark LLC

Contact Information:

839 N. Jefferson St., Suite 400
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: jkerkman@kerkmandunn.com